**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CLEO BROOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO. 07-0343-CG-C** |
| **v.** | ) | |
| | ) | |
| **U.S. XPRESS., INC., PANTHER II** | ) | |
| **TRANSPORTATION, INC., and** | ) | |
| **ZURICH NORTH AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>ORDER</u>**

This matter is before the court on plaintiff Cleo Brooks' ("plaintiff" or Brooks") motion to remand (Doc. 32), defendant U.S. Xpress, Inc.'s ("US Xpress") motion to dismiss (Doc. 5), defendant Panther II Transportation, Inc.'s ("Panther") motion for summary judgment (Doc. 23), Brooks' "Answer to Motion for Summary Judgment Filed in Behalf of Panther II, US Xpress, and Zurich North America and Motion for Summary Judgment $2,000,000.00 for Plaintiff Called Counter Motion" ("Plaintiff's Motion") (Docs. 28 and 29), and defendant Zurich American Insurance Company's ("Zurich") motion for summary judgment (Doc. 37)[1]. All three defendants filed motions to strike an affidavit that Brooks attached to his motion. (Doc. 30, pp. 5-6; Doc. 42; and Doc. 45) The court will address each motion in turn. For the reasons set forth below, the motion to remand is **DENIED**, US Xpress' motion to dismiss is **GRANTED**, Panther's and Zurich's motions for summary judgment are **GRANTED**, the motions to strike Brooks' affidavit are **DENIED** because they are moot, and Plaintiffs' Motion is **DENIED**.

---

[1]The court notes that, although the title to Plaintiff's Motion indicates that it is intended to respond to Zurich's motion for summary judgment, Zurich did not file its motion for summary judgment until over one month after Brooks filed Plaintiff's Motion.

## I.      THE MOTION TO REMAND

Brooks, an Alabama citizen, filed the complaint that initiated this lawsuit in the Circuit Court of Wilcox County, Alabama, on April 9, 2007.  (Doc. 2-3).  He alleged three counts against US Xpress, Panther, Zurich, and three fictitiously-named defendants.  US Xpress removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446 on May 14, 2007.  US Xpress asserted that removal was timely and that this court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the statute that establishes this court's diversity jurisdiction.  Panther and Zurich joined in and consented to removal on the same day that US Xpress removed the case.  (Docs. 3 and 4).  See Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1044 (11th Cir. 2001) ("The unanimity requirement mandates that in cases involving multiple defendants, all defendants must consent to removal."); but see Lowery v. Ala. Power Co., 483 F.3d 1184, 1195 (11th Cir. 2007) (no unanimity requirement for removal under Class Action Fairness Act of 2005).

Brooks filed a document entitled "Objection to Removal of Case, or Lawsuit," on July 20, 2007, in which he argued that the parties are not diverse because all of the parties do business in Alabama.  (Doc. 32).  The court construed Books' filing as a motion to remand and ordered the defendants to respond.  (Doc. 34).  The defendants timely responded.  Because Brooks filed his motion to remand more than thirty days after the notice of removal was filed, it must be based on a lack of subject matter jurisdiction.  See 28 U.S.C. 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

According to the defendants, this court has subject matter jurisdiction under 28 U.S.C. § 1332.  § 1332 provides a basis for original subject matter jurisdiction over actions between citizens of different states when the sum or value of the matter in controversy exceeds $ 75,000.

2

28 U.S.C. § 1332(a).  The statute requires complete diversity as between Brooks and each named defendant.  See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005).  Although "the citizenship of every plaintiff must be diverse from the citizenship of every defendant," Legg v. Wyeth, 428 F.3d 1317, 1321 n.2 (11th Cir. 2005), the court does not consider the citizenship of the fictitiously-named defendants for purposes of determining whether there is complete diversity between the parties in a removed case.  28 U.S.C. 1441(a).  See also Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1257 n.1 (M.D. Ala. 2001).

Plaintiff does not dispute that he is an Alabama citizen.  All of the defendants are corporations.  The diversity statute provides that a corporation is a citizen both of the state of its incorporation and also of the state in which it "has its principal place of business."  28 U.S.C. § 1332(c)(1).  US Xpress asserts that it is incorporated in Nevada and maintains its principal place of business in Tennessee.  (Doc. 2-2, p. 2).  Panther asserts that it is an Ohio corporation with its principal place of business in Ohio.  (Doc. 3, p. 1; Doc. 4, p. 1).  Zurich asserts that it is an Illinois corporation with its principal place of business in Illinois.  (Doc. 3, p. 1; Doc. 4, p. 1).

Although the removing party, not Brooks, bears the burden of establishing federal jurisdiction, Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001), the court finds that Plaintiff's Motion to remand does not undercut the defendants' allegations in support of removal.  Brooks asserts that Panther and US Xpress do business in Alabama and that Zurich insured him in Alabama.  (Doc. 32).  He also points out that his company is located in Alabama, payroll and billing is sent to Alabama, and that he was in Alabama during at least one of the two incidents that gave rise to this lawsuit.  These assertions may be true, but they do not suggest that any of the defendants are incorporated, or maintain their principal places of business, in Alabama.

The motion to remand is **DENIED**.

## II.    US XPRESS' MOTION TO DISMISS

US Xpress is the only party that has not answered the complaint.  Instead of answering, it filed a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6) on May 15, 2007.  (Doc. 5).  The court issued an order requiring parties opposing the motion to respond within ten working days of receipt of the motion.  (Doc. 10).  No party filed a response and, on June 18, 2007, US Xpress moved the court to grant its motion to dismiss due to the lack of opposition.  (Doc. 22).  Brooks filed Plaintiff's Motion on July 9, 2007.  (Docs. 28 and 29), to which US Xpress responded (Doc. 44).

### A.    Allegations

As they pertain to US Xpress' motion to dismiss, the relevant filings and allegations provide as follows.  Brooks' complaint alleges that he was injured "on or about May 24, 2002, while working in the line and scope of his employment with US Xpress."  (Doc. 2-3, ¶ 6).  At the time of this first injury, Brooks "was insured and/or a third party beneficiary under a separate group disability policy between his employer, US Xpress, and Zurich."  (Doc. 2-3, ¶ 6).  Brooks alleges that he was injured again on April 10, 2005, but that he was working for one of US Xpress' co-defendants, Panther, at the time.  (Doc. 2-3, ¶ 7).  Brooks alleges that he "was insured and/or a third party beneficiary under a separate group disability policy between his employer, Panther, and Zurich," at the time of his second injury.  (Doc. 2-3, ¶ 7).

Counts One and Three of Brooks' complaint allege claims against US Xpress.  Count One is for breach of contract.  In it, Brooks alleges that he made a claim for disability benefits under the Zurich policy, but that "Zurich has refused to pay the benefits and/or medical bills associated with Plaintiff's claim and injury of May 24, 2002," damaging Brooks.  (Doc. 2-3, ¶¶ 10 and 11).

4

Count Three is a claim for worker's compensation benefits.  Brooks bases his claim for worker's compensation benefits on two central allegations.  First, "[o]n or about May 24, 2002, and while working within the line and scope of his employment with US Xpress, the Plaintiff received injuries arising out of and in the course of his employment with the Defendant, namely an injury to his back."  (Doc. 2-3, ¶ 20).  Second, "[a]t all times material hereto, Plaintiff was able to perform the normal functions of his job, while working with Panther up until the time he was injured on April 10, 2005."  (Doc. 2-3, ¶ 21).

### B.      Motion to Dismiss Standard

A Fed. R. Civ. P. 12(b)(6) motion tests the legal sufficiency of the complaint.  This court may grant the motion only if it is clear that no relief could be granted under any set of facts that could be proven consistent with Brooks' allegations.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004).  In other words, the motion only requires this court to determine whether plaintiff's allegations, if proven, are sufficient to state a recognized claim at law upon which relief can be granted.

In analyzing the motion, this court must view the complaint in the light most favorable to the plaintiff.  Jenkins v. McKeithen, 395 U.S. 411, 421-422 (1969); Hishon, 467 U.S. at 73 (This court must, "[a]t this stage of the litigation, . . . accept [plaintiff's] allegations as true."); Stephens v. HHS, 901 F.2d 1571, 1573 (11th Cir. 1990); cf. South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 409 n. 10 (11th Cir. 1996) (conclusory allegations and unwarranted deductions of fact are not deemed true on a motion to dismiss.)

The rules of pleading require only that the First Amended Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). In sum, "the 'short and plain statement' must provide the defendant with 'fair notice of what the

plaintiff's claim is and the grounds upon which it rests.'" <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005), <u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  <u>See also</u> <u>Brown v. Snow</u>, 440 F.3d 1259, 1266 (11th Cir. 2006) (claims not included in the complaint's "short and plain statement of the claim" in the complaint are not before the court).

>    **C.     Analysis of US Xpress' Motion**

US Xpress argues that Count One should be dismissed because it did not owe plaintiff any contractual duty to make insurance payments.  (Doc. 5, pp. 4-5).  Rather, Zurich, the insurer, shouldered any such duty.

Plaintiff does not dispute US Xpress' characterization of its duty.  To the contrary, plaintiff alleges that he was insured under a policy between US Xpress and Zurich, that he made his claim for benefits with Zurich, and that Zurich failed to pay any benefits.  (Doc. 2-3, ¶¶ 9-10).  There is simply no allegation that US Xpress should have made any benefit payments to Brooks.  Plaintiff's Motion, which was filed significantly after his response to the motion to dismiss was due, specifically says that "our contention is the insurance carrier that [US Xpress and Panther] provided to me to cover all liabilities for me and them, Zurich . . ., is in breach of its contract as it applies to me."  (Doc. 28, p. 1).  Brooks goes on to argue that US Xpress is liable because it chose the insurer and "paid the insurance from my settlements."  (Doc. 29, p. 1).

As US Xpress correctly argues, it cannot be liable for breach of contract unless it breached a contractual obligation.

>    A breach of contract is defined as a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract."  To establish that a breach of contract occurred, [a plaintiff] must prove: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the [defendant's] nonperformance, and (4) damages."

<u>Irvin v. Community Bank</u>, 717 So. 2d 369, 371 (Ala. Civ. App. 1997) (citations omitted).  The

complaint does not allege that US Xpress had a contractual agreement to pay insurance benefits to Brooks.  Rather, it alleges that Brooks was the beneficiary of a policy between US Xpress and Zurich and that Zurich, not US Xpress, failed to follow through on its contractual allegations. Brooks' argument in response to US Xpress' motion makes this conclusion all the more apparent.  There is no set of facts that could be proven, consistent with the allegations in the complaint, that could establish US Xpress' liability for Zurich's failure to pay insurance benefits. The motion to dismiss Count One as to US Xpress is **GRANTED**.

US Xpress raises two arguments in favor of its dismissal from Count Three.  First, it argues that the definition of "employer" in the worker's compensation statute specifically excludes US Xpress from liability.  (Doc. 5, p. 2).  Second, US Xpress argues that plaintiff's worker's compensation claim is barred by a two-year statute of limitations.  For purposes of the motion to dismiss, the court focuses on the second argument.

As US Xpress argues, ALA. CODE § 25-5-80 (1975), provides that claims for compensation are "forever barred" unless they are made within two years after the accident or the date of the injury, or within two years after the date of the last payment of compensation on a particular incident.  See also Walker v. Flagstar Enters., 2007 Ala. Civ. App. LEXIS 608, at **6-16 (Ala. Civ. App. Sept. 21, 2007) (Worker's compensation claims generally must be brought within two years of the accident or the date of the employer's last voluntary payment of benefits resulting from the accident, or within two years from when a reasonable person should have known that "he or she has sustained an injury that is compensable.").

In support of his worker's compensation claim, Brooks alleges that he injured his back on May 24, 2002, when he worked for US Xpress and that he was re-injured in April 10, 2005, when he worked for Panther.  (Doc. 2-3, ¶¶ 6-7, 20-21).  Brooks' claim against US Xpress,

therefore, stems from the alleged May 24, 2002, back injury, which occurred more than two years before Brooks filed his lawsuit. There is nothing in the complaint, or in Brooks' response to the motion to dismiss, that suggests Brooks received any worker's compensation payments. In order to deny the motion based on statute of limitations grounds, the court would have to make an unwarranted deduction of fact. The motion to dismiss Count Three as to US Xpress is, therefore, **GRANTED**.

US Xpress' motion to grant the motion to dismiss due to plaintiff's failure to timely respond is **MOOT**.

### III.    PANTHER'S MOTION FOR SUMMARY JUDGMENT

Panther answered the complaint, denying most of the allegations in it, on May 21, 2007. (Doc. 11). It then filed a motion for summary judgment on June 19, 2007. (Docs. 23, 24, and 25). The court ordered responses by July 9, 2007, (Doc. 26) and Brooks filed his Plaintiff's Motion on July 9, 2007. (Docs. 28 and 29). Panther timely replied on July 19, 2007. (Doc. 30).

### A.    Allegations

The allegations against Panther are similar to the allegations against US Xpress. Brooks alleges that he was "re-injured on April 10 . . . while working in the line and scope of hi[s] employment for Panther. At that time, Plaintiff was insured and/or a third party beneficiary under a separate group disability policy between his employer, Panther, and Zurich." (Doc. 2-3, ¶ 7).

Counts Two and Three of Brooks' complaint allege claims against Panther. Count Two, entitled "Breach of Contract," specifically alleges that Brooks was injured "[o]n or about April 10, 2005 . . . while working in the line and scope of his employment and at that, he was insured and/or a third party beneficiary under a separate group disability policy between his employer,

Panther and Zurich[.]" (Doc. 2-3, ¶ 13).  Brooks alleges that he "made a claim for the disability

benefits under the policy with Zurich" but that "Zurich has refused to pay the benefits and/or

medical bills associated with Plaintiff's claim and injury of April 10, 2005." (Doc. 2-3, ¶ 14).  In

Count Three, Brooks alleges that he hurt his back on May 24, 2002, while working for US

Xpress, and that he injured himself again on April 10, 2005, while working for Panther.  (Doc. 2-

3, ¶¶ 6-7, 20-21).

###  B.      Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The

movant bears "the initial burden to show the district court, by reference to materials on file, that

there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats &

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

As succinctly stated by the Eleventh Circuit:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for
> the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d
> 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the
> burden of proving that no genuine issue of material fact exists.  O'Ferrell v.
> United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument
> of the moving party, the district court must view all evidence in the light most
> favorable to the non-moving party, and resolve all reasonable doubts about the
> facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.
> 1999).  Assuming the moving party has met its burden, the non-movant must then
> show a genuine dispute regarding any issue for which it will bear the burden of
> proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002).  The

purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587,

592 (11th Cir. 1995), <u>cert. denied sub nom</u>. <u>Jones v. Resolution Trust Corp.</u>, 516 U.S. 817

(1995).

> In opposing a motion for summary judgment, "a party may not rely on his
> pleadings to avoid judgment against him." <u>Ryan v. Int'l Union of Operating</u>
> <u>Engrs, Local 675</u>, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden upon
> the district court to distill every potential argument that could be made based
> upon the materials before it on summary judgment. <u>Blue Cross & Blue Shield v.</u>
> <u>Weitz</u>, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties
> to formulate arguments; grounds alleged in the complaint but not relied upon in
> summary judgment are deemed abandoned. <u>Road Sprinkler Fitters Local Union</u>
> <u>No. 669 v. Indep. Sprinkler Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994)(citing
> <u>Lazzara v. Howard A. Esser, Inc.</u>, 802 F.2d 260, 269 (7th Cir. 1986)), <u>cert.</u>
> <u>denied</u>, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

<u>Id.</u> at 599. The "complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 323 (1986). The failure by the nonmoving party to make a sufficient showing on an

essential element of its action entitles the moving party to judgment as a matter of law. <u>Id.</u> at

323.

### C.    Analysis of Panther's Motion

Panther argues that Brooks cannot make out a breach of contract claim because "Panther

never entered into any contract with Brooks under which Panther agreed to pay any benefits to

Brooks for death, disability, sickness, or injury, regardless of the cause." (Doc. 24, p. 8). Jeff St.

Pierre, Panther's Vice-President, Risk Management and Driver Services, affirmed this under

oath in an affidavit Panther filed in support of its motion. (Doc. 23-3, p. 3). The "Contractor

Operating Agreement for Tractor Trailers" pursuant to which Brooks drove for Panther does not

contradict Mr. St. Pierre's assertion. (Doc. 23-3, pp. 5-22).

Brooks himself does not contradict Mr. St. Pierre's assertion. To the contrary, Brooks

argues that he "never asserted that . . . Panther . . . was liable to pay claims, only that they chose and provided the carrier of the liability carrier and it is their job to demand the insurance carrier live up to the policy it purchased."  (Doc. 29, p. 6).  Brooks does not provide a factual basis upon which this court can conclude that Panther has violated any contractual duties.  As explained, above,  with regard to US Xpress' motion, Brooks has to show that Panther failed to perform a contractual duty in order to overcome Panther's motion.  Irvin, 717 So. 2d at 371.  Brooks may say that Panther has a duty to force Zurich to pay certain benefits, but he has not alleged, asserted, or, more to the point on summary judgment, produced any evidence to support his naked assertion that such an agreement exists.  Panther's motion for summary judgment on Count Two is **GRANTED**.

Panther argues that it is not liable on Count Three because only employers are liable to pay worker's compensation benefits and that the statutory definition of "employer" specifically excludes a "certificated carrier such as Panther from responsibility for payment of worker's compensation benefits to the owner-operator of a vehicle used under contract to that carrier." (Doc. 24, pp. 3-4).

Under Alabama's worker's compensation laws,

If an employer is subject to this article, compensation . . . shall be paid by the employer . . . in every case of personal injury or death of his or her employee caused by an accident arising out of and in the course of his or her employment, without regard to any question of negligence.

ALA. CODE § 25-5-51 (1975).  The worker's compensation laws define "employer" as follows,

Every person who employs another to perform a service for hire and pays wages directly to the person.  The term shall include a service company for a self-insurer or any person, corporation, copartnership, or association, or group thereof, and shall, if the employer is insured, include his or her insurer, the insurer being entitled to the employer's rights, immunities, and remedies under this chapter, as far as applicable.  The inclusion of an employer's insurer within the term shall not

provide the insurer with immunity from liability to an injured employee, or his or
her dependent in the case of death to whom the insurer would otherwise be
subject to liability under Section 25-5-11.  Notwithstanding the provisions of this
chapter, in no event shall a common carrier by motor vehicle operating pursuant
to a certificate of public convenience and necessity be deemed the "employer" of
a leased-operator or owner-operator of a motor vehicle or vehicles under contract
to the common carrier.

ALA. CODE. § 25-5-1(4) (1975).  Panther argues that it falls under the last sentence of the

definition of employer because Panther is a "common carrier by motor vehicle operating

pursuant to a certificate of public convenience and necessity" and Brooks was a "leased-operator

or owner-operator of a motor vehicle or vehicles under contract to" Panther.

Mr. St. Pierre's affidavit establishes, and Brooks does not dispute, that "Panther II is an

interstate common carrier of freight operating under authority of a certificate of public

convenience and necessity issued by the United States Department of Transportation."  (Doc. 23-

3, p. 1).  Mr. St. Pierre also swears that Brooks is an independent contractor, owner-operator of a

motor vehicle under contract to Panther, and attaches the contractual agreement pursuant to

which Brooks and Panther memorialized the terms of their agreement.  Brooks does not provide

the court with any facts to dispute Mr. St. Pierre's assertions in this regard, either.  As such,

Panther is not an "employer" under Alabama's worker's compensation laws and its motion for

summary judgment on Count Three is **GRANTED**.  See also Kerns Trucking, Inc. v. Whiteside,

934 So. 2d 383 (Ala. Civ. App. 2005) and Alaplex Transp., Inc. v. Rossen, 836 So. 2d 901 (Ala.

Civ. App. 2002) (both dismissing similar claims on similar grounds).

## IV.    ZURICH'S MOTION FOR SUMMARY JUDGMENT

Zurich filed its motion for summary judgment on August 17, 2007.  (Docs. 37, 38, and

39).  This court issued an order, requiring responses by September 6, 2007.  (Doc. 40).  No

responses were filed and, on September 17, 2007, Zurich filed a "reply" brief, arguing that the

court should grant its motion for summary judgment for the want of opposition.  (Doc. 46).

The only counts that appear to allege claims against Zurich are Counts One and Two.  As set forth above, Count One alleges that Zurich has not honored the terms of an insurance policy between US Xpress and Zurich (the "US Xpress policy") on which Brooks was an "insured and/or a third party beneficiary" and Count Two makes the same allegation as to another Zurich policy between Panther and Zurich (the "Panther policy").

Zurich argues that it is entitled to have its policy provisions enforced as written and advances two arguments in support of its motion for summary judgment.  The court agrees with the first argument, that Brooks is not entitled to relief because he has not met his contractual obligations to provide Zurich with sufficient "proof of loss."  Because the court grants the motion based on this argument, the court does not address Zurich's second argument: that Brooks cannot, as a matter of law, demonstrate that he is entitled to benefits under the terms of the two Zurich policies.

The US Xpress policy provides four types of coverage, (1) accidental death and dismemberment benefits, (2) temporary total disability benefits, (3) continuous total disability benefits, and (4) accident medical and dental expense benefits.  (Doc. 37-2, pp.13-18). Plaintiff's complaint alleges that he "made a claim for disability benefits" under the US Xpress policy, but that Zurich did not "pay the benefits and/or medical bills associated with Plaintiff's claim and injury of May 24, 2002."  (Doc. 2-3, ¶ 10).  This allegation asserts coverage for temporary total disability benefits, continuous total disability benefits, and accident medical and dental expense benefits.

The US Xpress policy provides that Zurich will pay temporary total disability benefits when it receives "proof, acceptable to Us that . . . such Temporary Total Disability . . . resulted

solely and directly from an Injury, while insured under the Policy [and] . . . was a result of an Injury sustained while performing the Duties of the Covered Person's Occupation." (Doc. 39, pp. 2-3, quoting Doc. 37-2, p. 14). Zurich's duty to pay continuous total disability benefits is similarly triggered when it receives "proof, acceptable to Us, that . . . such Continuous Total Disability . . . resulted solely and directly from an Injury, while insured under the Policy [and] . . . was a result of an Injury sustained while performing the Duties of the Covered Person's Occupation." (Doc. 39, p. 3, quoting Doc. 37-2, p. 15). Finally, Zurich must pay accident medical and dental expense benefits if the insured incurs such expenses "resulting from an Injury." (Doc. 37-2, p. 16). Its obligation to pay accident medical and dental expense benefits is triggered with it receives "written Proof of Loss that is acceptable to Us." (Doc. 37-2, p. 17).

"Injury" is defined in the US Xpress policy as "an accidental bodily injury that is caused solely by accidental means and is independent of all other means." (Doc. 39, p. 2, quoting Doc. 37-2, p. 14). An insured must be under the care of a physician to receive temporary or continuous disability payments. (Doc. 37-2, pp. 14 and 15).

As for the Panther policy, Brooks similarly claims that he "made a claim for the disability benefits under the policy" but that Zurich has not paid "the benefits and/or medical bills associated with Plaintiff's claim and injury of April 10, 2005." (Doc. 2-3, ¶ 14). Zurich is obligated to pay temporary total disability benefits and continuous total disability benefits if Brooks suffered an Injury. The policy defines "temporary total disability," in part, as requiring "monthly monitoring and/or evaluation of the disabling condition by a Physician," proof of which Zurich must receive on a monthly basis. (Doc. 37-2, pp. 50-51). "Continuous total disability" is similarly defined, but rather than monthly monitoring, evaluation, and updates to Zurich, the policy requires quarterly monitoring, evaluation, and updates to Zurich. (Doc. 37-2,

pp. 52-53).  The accident medical expense benefit applies "[i]f an Insured Person suffers an Injury that requires him to be treated by a Physician."  (Doc. 37-2, p. 53).

Finally, under the Panther policy, "Injury means bodily injury to an Insured Person caused by an Accident while coverage is in force under this Policy, which results directly from and independently of all other causes in a Covered Loss.  All Injuries sustained by an Insured Person in any one Accident shall be considered a single Injury."  (Doc. 39, p. 4, quoting Doc. 37-2, p. 45).  "Accident means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the Policy term."  (Doc. 39, p. 4, quoting Doc. 37-2, p. 44).

Zurich will pay benefits under this policy if the insured person suffers an injury, except that the "Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from . . . sickness, disease or infections of any kind [or] . . . any Pre-existing Condition, until the Insured Person has been continuously covered under this Policy for twelve (12) consecutive months."  (Doc. 39, p. 6, quoting Doc. 37-2, p. 56).  Claims will be paid under the policy "[u]pon receipt of due written Proof of Loss."  (Doc. 39, p. 6, quoting Doc. 37-2, p. 57).  The policy provides

> Written Proof of Loss which is satisfactory to the Company, must be furnished to the Company within ninety (90) days after the date of the loss. . . . Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of a legal capacity of the claimant, later than one year from the time proof is otherwise required.

(Doc. 39, p. 6, quoting Doc. 37-2, p. 57).

Zurich argues that it has not received "due proof of loss" to trigger its obligation to pay under either policy.  It points out that "an insurer's obligation to pay or to evaluate the validity of

an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."  Nationwide Ins. Co. v. Nilsen, 745 So. 2d 264, 267 (Ala. 1998).  See also United Ins. Co. of America v. Cope, 630 So. 2d 407, 411 (Ala. 1993) (Although insurer cannot avoid duty to pay valid claims "by deliberately refusing to determine whether a claim is valid," obligation to pay or evaluate claims does not arise until insured complies with policy's claims submissions requirements.).

 In this case, the Zurich's obligation to pay benefits does not begin under either policy until it receives "due proof of loss," something that neither policy defines with much, if any, specificity.  As the Eleventh Circuit summarized,

> It is clear that under Alabama law, [due proof of loss] is a legitimate condition precedent to the insurer's duty to pay benefits.  The purpose of requiring such proof is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud.  No liability attaches unless proof is furnished or unless the provision is waived. Equitable Life Assurance Society v. Dorriety, 229 Ala. 352, 157 So. 59 (1934).

> It is also undisputed that [the insurer's] policy did require proof of loss as a condition precedent to recovery of the policy's benefits.  However, the policy did not require that any particular form be used in presenting a proof of loss, other than the stipulation that it be in writing.  Nor did the policy define what would constitute an acceptable proof of loss.  Thus, we must turn to Alabama law to determine the standard for evaluating the acceptability of [the insured's] medical evaluations as a "written proof of loss."

> Alabama case law stipulates that "due proof" for proof of loss purposes is "such a statement of facts, reasonably verified, as, if established in court, would prima facie require payment of the claim. . . ."  Dorriety, 157 So. at 62.  The insured is not "bound to comply with the condition with technical strictness, either as to time or manner of compliance."  Id.

Lee v. Prudential Ins. Co., 812 F.2d 1344, 1346 (11th Cir. 1987) (ellipsis in original, brackets supplied).

 Zurich says that Brooks did not meet his obligation to provide it with due proof of loss

because he did not return certain Attending Physician's Statements, which would have allowed Zurich to determine whether Brooks was under the care of a physician for the alleged disability, whether the disability would be permanent, and whether it "was contributed to by a pre-existing disease, illness or other cause." (Doc. 39, p. 17). As explained in an affidavit signed by Janet Warley, Team Manager of the Occupational Disability Claims Department of Zurich American Insurance Company, Brooks initially alerted Zurich to the possibility of a claim under the US Xpress policy by telephone on June 13, 2002. (Doc. 37-2, p. 2). The next day, June 14, 2002, Zurich wrote Brooks, enclosing and asking him to complete a Statement of Facts form, an authorization to obtain medical information, and either a copy of the emergency room report or a Physician's Report, to be filled out by Brooks' main treating physician. (Doc. 37-2, p. 2). According to Warley,

> The Physician's Report provides Zurich with basic information concerning the nature of the injury made the basis of the claim, whether the injury was caused by an accident and/or contributed to by some condition not covered by the policy, the projected course of future treatment, and whether and for how long the claimant was disabled as a result of the accident.

(Doc. 37-2, p. 2). The June 14, 2002, letter also asked Brooks to send a copy of the physician's notes, a settlement deduction sheet, a copy of any accident report, and any medical bills he had. Despite two follow-up letters from Zurich, dated July 16, 2002, and August 16, 2002, neither Brooks nor anybody else responded to Zurich's request for information. (Doc. 37-2, pp. 2-3). Zurich told Brooks that it was closing its file in its August 16, 2002, letter. (Doc. 37-2, p. 3).

Zurich did not hear from Brooks again until February 7, 2006, when it received notice of a claim stemming out of the April 10, 2005, incident. (Doc. 37-2, p. 3). Zurich wrote Brooks on February 8, 2006. Its letter enclosed, and asked Brooks to complete and return, an Occupational Accident Proof of Loss form, an Authorization to Obtain Medical Information, and an Attending

Physician's Statement to be completed by Brooks' main treating physician.  (Doc. 37-2, p. 3).

Zurich also asked Brooks to send a copy of any police reports, medical bills, verification that "he

was on dispatch at the time of the accident, settlement sheets, and verification of his income with

a copy of his prior year's federal tax return if Brooks planned to claim disability benefits from

lost time from work.  (Doc. 37-2, p. 3).

On March 7, 2006, Zurich wrote Brooks again, to tell him that Zurich would close its file

if it did not receive the information it requested by April 3, 2006.  (Doc. 37-2, p. 3).  Before

receiving any response from Brooks, Zurich received a statement for charges and medical

records from Monroe County Hospital.  (Doc. 37-2, p. 3).  The medical records indicate that

Brooks has a history of sickle cell anemia and that he reported to the hospital with fever,

malaise, nausea, and diarrhea and was diagnosed as having sepsis.  (Doc. 37-2, p. 4).  Brooks'

gallbladder contained gallstones and a trace amount of fluid, which the physicians believed may

have caused Brooks' fever.  (Doc. 37-2, p. 4).  Brooks' gallbladder was removed intact,

antibiotics improved Brooks' fever, and he was released from the hospital.  (Doc. 37-2, p. 4).

Brooks also complained to the doctors about right arm pain, weakness for months, and diffuse

body aches over the two days preceding his hospitalization.  (Doc. 37-2, p. 4).

Zurich responded to this information by writing a letter dated June 13, 2006, to the

hospital, with copy to Brooks, explaining that the file was closed because Brooks did not provide

Zurich with the information it needed to process the claim.  (Doc. 37-2,p. 4).  Brooks

subsequently sent Zurich a facsimile, attaching some of the information Zurich requested and

Brooks' narrative statement, but omitting either of the completed physicians statements or

reports that Zurich requested.  (Doc. 37-2, pp. 4-5).  Zurich responded to Brooks' facsimile on

July 12, 2006, with a letter asking him to supplement his facsimile with, among other things, an

18

Attending Physician's Statement completed by Brooks' main treating physician.  (Doc. 37-2, p.

5).  Brooks did not return the Attending Physician's statement for either of his two claims.  (Doc.

37-2, p. 5).

      Zurich sent the information it had been provided concerning Brooks to Medical Review

Institute of America, Inc. ("MRI of A") for an independent medical review.  (Doc. 37-2, p. 5).

MRI of A prepared a report dated December 4, 2006,[2] indicating that the medical records

establish Brooks' April 14, 2006, hospitalization as attributed to his pre-existing condition of

sickle cell anemia rather than to an accident.  (Doc. 37-2, p. 5).  The report recognizes that

Brooks "claims he was told he had a gallstone or kidney stone which had been burst into about

30 pieces from the 2002 accident," but concludes:

> The records indicate the patient sustained an injury to his right knee in 2002.  The
> patient states, although unsubstantiated by the medical records, that he also had a
> "sore stomach" after the injury.  Sometime in 2003 the patient began to
> experience symptoms of intermittent abdominal pain.  There was no evidence by
> CT scan or laparoscopic evaluation of a previous intra-abdominal injury or
> "rupture of the gallbladder" as stated by the patient.  There is no evidence to
> substantiate that the 2002 injury is in any way related to the patient's septic
> episode 3 years later.  There is no scientific basis to substantiate that the injury
> claim from 2005 is related to the injury claim in 2002.
>
> The patient's claim that a bump of his abdomen to the steering wheel resulted in
> the septic episode leading to admission on 4/14/05 is without merit.  The patient
> presented with classic sickle cell crisis as a result of the patient's sickle cell
> anemia.  There is no basis to support the patient's contention that his gallbladder
> had ruptured or that a gallstone or kidney stone had been broken into pieces.
>
> The patient's presentation on 4/14/05 is classic for sickle cell crisis.  The patient's
> contentions that his hospitalization in 2005 was related to either the 2002 or 2005
> injury are unsupported by any scientific basis.  There is no evidence that the
> patient had previous abdominal trauma including objective findings at
> laparoscopy and on abdominal CT.  There is no evidence that the patient had

---

[2]The report itself is dated December 4, 2006, but the facsimile cover sheet enclosing the
report to Zurich is dated December 11, 2006.  (Doc. 37-2, pp. 188-89).

rupture of the gallbladder and there is no scientific basis that large gallstones can be broken into small pieces from bumping a blunt object.

The presentation which is consistent with sickle cell crisis and chronic cholecystitis are in no way related to either of the reported injuries in 2002. The operative findings do not substantiate acute or gangrenous cholecystitis. Even if acute cholecystitis was present, it is a completely unrelated entity to the described injuries.

**Conclusion:**
Is the 2005 injury . . . due to accident or is the 2005 injury due from 2002 injury . . . ?

The patient's septic presentation on 4/14/06 [sic] was a result of sickle cell crisis secondary to the patient's pre-existing condition of sickle cell anemia. The symptoms the patient experienced were unrelated to either the injury in 2002 or the bumping of the abdomen on the steering wheel in 2005. Pigmented gallstones and chronic cholecystitis are known sequelae of sickle cell disease and have no relation to the injuries reported in 2002 or 2005. The 2005 injury claim . . . is neither due to accident nor is it due to the 2002 injury claim.

(Doc. 37-2, p. 192-93).

Zurich sent a copy of the foregoing report to Dr. Powell and Dr. Cook, two doctors who treated Brooks, to see if those physicians agreed with the conclusion with the decision in the MRI of A report. (Doc. 37-2, p. 5). Dr. Cook responded to Zurich's letter, stating, "I concur with your conclusion that the patient's septic episode resulted from his sickle cell disease and not previous accidents." (Doc. 37-2, p. 6, quoting Doc. 37-2, p. 213).[3] Dr. Powell never responded to Zurich's letter. (Doc. 37-2, p. 6).

The court has reviewed the information that Monroe County Hospital submitted to Zurich before this lawsuit was filed (Doc. 27-2, pp. 108-171), the information that Brooks submitted to

---

[3]Although Dr. Cook's letter is directed to Karen Switzer, the Zurich Claims Specialist who wrote Dr. Cook to see whether she agreed with MRI of A's assessment of the medical records, Dr. Cook apparently sent it to the wrong address. Karen Switzer's mailing address is in Jamaica, New York but Dr. Cook sent her letter to Salt Lake City, Utah, where MRI of A is located.

Zurich before he filed this lawsuit (Doc. 27-2, pp. 174-183), and the information Brooks

submitted with his Plaintiff's Motion (Docs. 28 and 29).  Although the court itself is not a

medical expert, it did not find anything other than Brooks' unsworn statement to establish that

the cause of Brooks' ailments stemmed from either accident, rather than from Brooks' sickle cell

anemia.  The court's review of the records also did not uncover evidence that Brooks was, or is,

receiving ongoing treatment for the physical condition which caused the disability for which he

claims disability benefits.  Brooks had the opportunity to have a doctor fill out the physician's

statements that Zurich sent to him or to provide expert testimony in this case to show why his

ailments are insured, but he did not do so.  He simply did not provide Zurich, or the court, with

evidence to establish a prima facie case for benefits under either policy.  Zurich's motion for

summary judgment is therefore **GRANTED** based on its argument that Brooks did not provide it

with due proof of loss.

### V.    MOTIONS TO STRIKE.

All three defendants moved to strike the affidavit Brooks filed in support of what the

court is referring to as his Plaintiff's Motion.  (Doc. 30, pp. 5-6; Doc. 42; and Doc. 45).  Those

motions are deemed **MOOT**.

### VI.   THE PLAINTIFF'S MOTION

Brooks filed his Plaintiff's Motion on July 9, 2007, seeking a $2,000,000 judgment.

(Docs. 28 and 29).  Although the motion has not been fully briefed in the traditional sense, the

court has addressed all of Brooks' arguments in the course of ruling on the defendants' motions.

The Plaintiff's Motion is **DENIED**.

### VII.  CONCLUSION

For the reasons set forth above, the motion to remand is **DENIED**, the defendants'

motions to dismiss and for summary judgment are **GRANTED**, US Xpress' motion to grant the

motion to dismiss for lack of a response is **MOOT**, the motions to strike Brooks' affidavit are

**MOOT**, and the Plaintiff's Motion is **DENIED**.

      **DONE** and **ORDERED** this 11th day of April, 2008.

                          /s/ Callie V. S. Granade
                          CHIEF UNITED STATES DISTRICT JUDGE